ELIZABETH PLONTY v. WILLIAM MURPHY.[1]

January 18, 1901.

Nos. 12,313—(189).

**Assault—Miscarriage—Damages.**

> On the trial of a civil action for the recovery of damages for an alleged assault upon a woman pregnant with child, an alleged result being a miscarriage, it is not necessary, in order for the plaintiff to recover substantial damages for this particular injury, that she show by testimony that she suffered more pain, or increased illness, or greater impairment of health, than she would if the delivery of the child had been at the proper time and in the natural way.

**Evidence.**

> *Held*, that the evidence was sufficient to support a finding of the jury, in effect, that defendant committed an assault upon plaintiff.

**Verdict Sustained by Evidence.**

> *Held*, notwithstanding expert testimony upon the subject adduced at the trial, that there was evidence in this case from which the jury could find that the assault was the proximate cause of the miscarriage; and also *held*, in view of this fact, that the verdict is not excessive in amount.

Action in the district court for Ramsey county to recover $5,000 damages for assault. The case was tried before Jaggard, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Stevens, O'Brien, Cole & Albrecht*, for appellant.

*Charles Butts*, for respondent.

COLLINS, J.

This was an action for damages, arising, it was claimed, out of an assault upon the plaintiff, a married woman, aged about thirty-two years, by defendant, a man seventy-eight years of age; the verdict being for the plaintiff in the sum of $300.

The defendant was the owner of certain tenements in the vicin-

[1] Reported in 84 N. W. 1005.

ity of the house in which plaintiff resided with her husband and children. There had been some refuse—about a pailful of banana peelings and dirt—deposited in the yard of one of the tenements, and according to plaintiff's version of the affair, which the jury was justified in believing as against that related by defendant, the latter went to plaintiff's house, unceremoniously entered the kitchen, where she was at work alone; demanded that her boy, aged five years, remove this refuse, and notified her that if he again found the boy in that yard he would "thrash" him. The plaintiff informed him that the boy would do as requested. Defendant remained in the house about ten minutes, talking in an excited and angry manner, shook his fist at plaintiff when within striking distance, raised his hand as if he would strike her, and she testified that she was afraid he would strike. His tone of voice was loud, he repeated his demand and threat to whip the boy, and slammed the door when going out of the house. It is quite evident that the defendant unjustifiably intruded himself upon plaintiff by entering the kitchen in which she was at work, and, according to her testimony, became violent in language and threatening in manner. While the evidence was conflicting, and, at best, the plaintiff did not make out an aggravated case of assault, the jury was justified in finding that defendant's behavior was intentionally oppressive, reasonably calculated to create apprehension of present violence, and a fear that he might go further, and commit a battery upon plaintiff's person, and that he displayed force sufficient, under the circumstances, to cause the plaintiff reasonably to expect and fear an injury. This question was one of fact. The jurors had both parties before them as witnesses, and were consequently better qualified to determine the character of the interview than is an appellate court.

We have not referred to the testimony that about an hour afterwards defendant seized the boy when in the yard of the house in which plaintiff lived, pulled him through the gate, and compelled him to go to the place where the refuse had been piled. This was not an assault upon plaintiff, but it served to show defendant's character and manner immediately after he had an altercation with her.

The plaintiff was pregnant at the time, and the testimony was that she became much excited, did not sleep that night, had bearing-down pains next morning, commenced to flow within three days, and eight days afterwards was delivered of a six-months child, which, if living at the time of delivery, expired immediately afterwards. It is contended by counsel for the defendant that there was no testimony whatever to connect the miscarriage with the assault, or from which the jury could find that the premature birth of the child was in any manner attributable to the difficulty eight days previous. It is true that the medical testimony was to the effect that the affair, as related by the plaintiff, could not possibly cause a shock sufficient to produce a miscarriage; but the jurors were not bound to accept this medical testimony as conclusive. It was wholly based upon hypothetical questions, and open to the criticism which can properly be made as to all testimony of this nature. The plaintiff was a healthy young woman, the mother of two children, and this was her first and only miscarriage. The conduct of the plaintiff excited her fear; she was unable to sleep that night; this closely followed, in point of time, by the bearing-down pains and the flow, which, within eight days, ended in the miscarriage. No other cause was shown,—although perhaps it was attempted,—except that for which the defendant must be held responsible, and, in spite of the medical evidence, we are not prepared to hold, as a matter of law, that the two events were not sufficiently associated and adequately connected, and that the defendant's acts were not the proximate cause of plaintiff's misfortune. There was the physical fact that there had been some threats of violence on the part of defendant which frightened the plaintiff to some extent, and there were the other physical facts which culminated in the birth of the child three months before time. Expert testimony, based upon hypothesis, must give way to physical facts in some cases, and we have such a case here.

When instructing the jury, the court charged that the mere proof that a child was prematurely delivered because of the wrong to its mother was not sufficient to establish her right to recover substantial damages for that injury. The recovery, if any, must

be, said the court, for the ill health and suffering attendant and consequent upon the miscarriage, and not, in any sense, for the loss of the child; and damages resulting to plaintiff, in connection with the impairment of health and the suffering growing out of the death and premature birth of the child, if such as would not have attended the birth at the usual time, either alive or dead, might be weighed while estimating the damages to be awarded for the wrong done. Counsel for the defendant contend that this was error, because there was not a particle of evidence tending to show that the plaintiff suffered any pain or inconvenience or injury by reason of the miscarriage which would not have been suffered if there had been no such misfortune, and the child had been born at the proper time.

The contention is that the absence of such evidence cannot be supplied by conjecture or imagination. Reliance is placed upon Hawkins v. Front St., 3 Wash. St. 592, 28 Pac. 1021, in which the court held that it was necessary to show such injury by appropriate evidence, and that mere proof that the child was prematurely delivered, and was dead, as the result of an accident, would not be sufficient to support a verdict for substantial damages. The court in its opinion in that case said: "From aught that appears, there was no perceptible difference in the amount of pain and illness attending the delivery of the child dead from what there would have been had it been alive. It may have been imagined that there would be, but there is no testimony that there was." We find no other case which supports these views, and none was cited by the court when delivering the opinion.

We cannot agree to the proposition that it is necessary to prove, in a case of miscarriage, that there is more pain, increased illness, and greater impairment of health than there would have been if the delivery had been at the proper time and in the natural way. If there is no interference with nature, it takes its course, and at the expiration of the well-known period the birth is regular, the child is brought forth in accordance with the methods of nature, and, fortunately, there is, in most cases, no great amount of illness or suffering, and little impairment of health. These are matters of common knowledge, and it is also a matter of common

knowledge that a miscarriage is much more dangerous and severe in a great majority of cases than is ordinary childbirth. This knowledge expresses itself in the sympathy which is almost universally extended to the honest woman who has been so unfortunate as to have a miscarriage. We regret such an occurrence, because we know, without the testimony of witnesses, that when nature is interfered with in this manner the pain is greater, the suffering more acute, the delivery much more dangerous and serious, and permanent injury to the health of the female much more liable to ensue, than it is where the natural course of events is undisturbed.

Again, how would it be possible to show by competent testimony that there is a "perceptible difference" in the amount of pain and illness attending delivery in miscarriage and delivery in the natural way, or that the health of the mother is impaired to a greater extent in the one case than in the other. If we should call accoucheurs, it would be a mere matter of opinion, based entirely upon their observation when attending cases of confinement and when delivering in miscarriages as well as in ordinary cases,—opinions based wholly upon their observation as to the amount of pain and suffering endured by female patients when in labor and under all kinds of physical conditions, as well as absolutely different environments. The worthlessness of opinion evidence on the subject is apparent, and this is also true in respect to injury to the health of the mother. But it may be suggested that the fact is susceptible of proof from the woman herself. Where, in regard to evidence sufficient to support a verdict, this would leave the female who, without previous experience in childbirth in the course of nature, suffered a miscarriage for which she claimed damages of one whose unlawful act was alleged to be the proximate cause, we need not stop to determine. Nor need we ask where would it leave a defendant who undertook to refute the testimony. The suggestion of such a situation is a complete answer to any claim that the evidence as to the comparative pain and suffering in cases of miscarriage and normal delivery might be furnished by the woman herself. We decline to adopt the rule established in the Hawkins case. It is unreasonable, and not in

accordance with what, to us, seems sensible, as well as just and necessary, in the matter of proof.

We see no other assignments of error that need be particularly considered, nor do we, in view of the evidence as to the miscarriage, consider the verdict excessive in amount.

Order appealed from is affirmed.